## SIDWAY v. HARRIS.

### Opinion delivered April 22, 1899.

1. USURY—WHAT DOES NOT CONSTITUTE.—A loan is not rendered usurious by reason of the fact that the borrower paid the fee of an attorney for passing upon the abstract of title and other papers presented to the lender as a basis upon which to effect a loan, and also paid a commission to his own broker for procuring the loan. (Page 389.)

2. FOREIGN CORPORATION—VALIDITY OF ACTS DONE BEFORE ACT OF 1887.—The act of April 4, 1887, regulating foreign corporations doing business in the state, which provides [§ 3] that "any foreign corporation that has heretofore engaged in business or made contracts in this state may, within ninety days from the passage of this act, file such certificate [of appointment of an agent] with the secretary of state, and thereon all their contracts made before this act goes into effect are hereby declared as valid as if said certificates had been filed before they began business in this state," did not have the effect to invalidate such existing contracts of foreign corporations which had complied with all laws in force at the time the contracts were entered into, but neglected to comply with the act of 1887. (Page 390.)

3. SAME—EVIDENCE.—Proof that a certificate of appointment of an agent of a foreign corporation did not comply with the act of April 4, 1887, does not show non-compliance therewith, as it is not shown that another and valid appointment was not made. (Page 393.)

Appeal from Baxter Circuit Court in Chancery.

JOHN B. McCALEB, Judge.

L. B. Sidway and the American Mortgage Company of Scotland (Limited) brought suit against John W Harris and wife to foreclose a deed of trust executed by him to Sidway as trustee for the company. The facts are stated in the opinion.

*DeRoos Bailey*, for appellants.

The burden of proving usury is on him who alleges it. 109 N. Y. 477; 57 Ark. 256. When an agent receives a *bonus*, which, added to the interest exacted by the lender, exceeds ten per cent. per annum, but without the knowledge of the lender and without circumstances from which such knowledge could reasonably be presumed, the lender is not guilty of exacting

usury.   51 Ark. 544; 54 Ark. 155; *ib.* 50; 57 Ark. 251; 63 Ark. 249; 116 U. S. 98; 57 Ark. 357; 38 N. Y. 281.   Authority to exact usury is never presumed.   116 U. S. 561. Authority to employ sub-agents is not implied.   54 Ark. 566.

*Horton & South,* for appellee.

A foreign corporation cannot do business in Arkansas until it files the required certificate, *signed by its president.*   Sand. & H. Dig. §§ 1323, 1324; Const. Ark. art. 12, §11; 104 U. S. 11; 113 U. S. 727; 27 Am. & Eng. Enc. Law, 378, note 2; 23 Ark. *ib.* 298, 299; 8 *ib.* 330–340.   If the principal suffers the agent to loan money in his own name, without disclosing his agency, the agent will be treated as principal as to all consequences of his acts.   Mechem, Ag. § 745; 54 Ark. 566; 3 Neb. 256; 11 *ib.* 487; 53 Ia. 627.   The transaction was usurious.   47 Ark. 287; 55 *ib.* 268, 143; 51 Ark. 143; 54 Ark. 573, 40; 64 *ib.* 47, 48.

BUNN, C. J.   This is a suit to foreclose a deed of trust given on land to secure a note for $850, both dated January 9, 1887, bearing interest at the rate of eight and a half per centum per annum, payable annually on the 1st day of January of each year, and the principal due January 1, 1894.   The interest, up to the maturity of the principal note, was evidenced by coupon notes, each for $72.25, and payable at the end of each year, as stated.   The whole after the maturity of the principal to bear ten per cent. per annum interest until paid.   On default of the payment of any one of them, the whole debt might be treated as due at the option of the holder, and all expenses, such as taxes and sums laid out by the parties interested in the preservation of the property, were to be added to the mortgage debt, and also an attorney's fee of ten per cent. in case of suit.   The notes, on their face, were made payable in Chicago; but the defendants, in their answer, insist strenuously that this is an Arkansas contract, and the plaintiffs seem to have conceded the point, and the cause was heard and determined according to the laws of Arkansas.   One of the defenses set up in the answer is the plea of usury; and if this case is governed by the laws of Arkansas, and if the plea of usury is established by the evidence, the defendant asks that the contract may be declared to be null and void, and the note and deed of trust be

cancelled and held for naught.   If, on the other hand, the case
is governed by the laws of Illinois, and the plea of usury be
sustained, he asked that all interest be forfeited, and that he
have his recoupment or setoff for such of the interest as he has
paid.

On the objection of the defendant, in his answer, to the
application of the laws of Illinois, notwithstanding the note is
made payable in Chicago, the case was tried and decree ren-
dered as if the case was governed by the laws of Arkansas, and
we cannot do otherwise than so treat it now.   The interest ex-
pressed in the face of the note is eight and one-half per cen-
tum per annum, and the maximum rate in this state is ten per
centum per annum.   It follows, therefore, that, upon the
face of the contract, it is not usurious.   But it is con-
tended that the extraneous proof shows that the contract
was in fact usurious; for, while the amount of money loaned
to the defendant, ostensibly, was $850, yet, in truth and
in fact, only $786.25 were loaned to him.   The annual in-
terest on the $850 would be $72.25 at the rate of $8\frac{1}{2}$ per cent.
and this is the amount called for by each of the interest coupons;
while the annual interest on $786.25, the amount claimed to
have been actually received on the loan by the defendant, at
the rate of ten per cent.—the highest legal rate in this state—
would be $78.62, which is greater than the annual rate sought
to be collected.   The plea of usury is to the effect that the
plaintiff would receive more than ten per centum per annum by
his usurious contract, but, taking the statement of the defend-
ant to be true that he only borrowed $786.25, instead of the
$850, the calculation still does not show usury.

Again, the difference between the amount called for by the
note and that claimed in fact to have been loaned to the de-
fendant is $63.75, and this amount is shown by the evidence to
be made up of the $25 paid an attorney in Chicago for passing
upon the abstract of title and other papers presented by the
defendant as a basis upon which to effect the loan, and is put
down among the expenses he agreed to bear, and $38.75 which
the duly-authorized agents of the defendant in Arkansas appear
to have taken out of the fund received by them for him as their
fee and expenses paid by them.   Under the rulings of this

court, these transactions do not evidence usury in the contract. So, looking at it from every standpoint, we see no usury in this case according to the laws of this state.

There is another question raised by the answer, namely, that the plaintiff corporation—the real lender of the money, as is claimed by it—had not *by its president* appointed, in writing filed in the office of secretary of state, an agent, and designated his place of business, upon whom service of process might be had in order to bind said corporation.

When the contract sued on herein was made, to-wit, the 9th of January, 1887, the act of April 4, 1887, upon which this plea was presumably made, had not been passed and become a law. This record shows that on the 31st of January, 1883, the corporation, over the signatures of two of its directors and its secretary, attested by its corporate seal, had appointed (in writing, and caused the same to be filed in the office of the secretary of state) John M. Rose, Esquire, as its agent, designating his residence in the city of Little Rock, upon whom such service might be had, and, when had, that it should be binding upon it. At that time there was only the constitutional provision and prior statutes carried over by the constitution on the subject in force, and the appointment so made by the plaintiff corporation will, of course, be seen to be a full compliance with that provision, and, strange to say, was in substantial compliance with the act of April 4, 1887, passed more than four years afterwards. except that the certificates was made by two directors and the secretary, instead of the president, as the later act requires.

The constitutional provision and the compliance therewith may be regarded as constituting an implied contract between the state and this foreign corporation to govern all business transactions had until there should be a change in the law, which change, of course, the state had a right to make at any time to regulate future business. Whether it could make such change in the laws so as to operate retroactively is another question.

The said act of April 4, 1887, (see Acts of 1887, pp. 234, 235) reads as follows, to-wit:

Section 1. "Before any corporation shall begin to carry on business in this state, it shall, by its certificate under the hand of the president and seal of such company, filed in the

office of the secretary of state, designate an agent, who shall be a citizen of this state, upon whom service [of] summons and other process may be made. Such certificate shall also state the principal place of business of such corporations in this state. Service upon such agent shall be sufficient to give jurisdiction over such corporation to any of the courts of this state."

Sec. 2. "If any such foreign corporation shall fail to comply with the provisions of the foregoing section, all its contracts with citizens of this state shall be void as to the corporation, and no court of this state shall enforce the same in favor of the corporation."

These two sections plainly refer to corporations contemplating engaging in business in this state—business to be transacted after the passage of the act—and section 3 has reference to corporations which have already been carrying on business in the state, and reads as follows:

Section 3. "Any foreign corporation that has heretofore engaged in business or made contracts in this state may, within ninety days from the passage of this act, file such certificate with the secretary of state, and thereon all their contracts made before this act goes into effect are hereby declared as valid as if said certificate had been filed before they began business in this state."

Section 7. "This act shall take effect and be in force from and after its passage. Approved April 4, 1887." Whatever became of sections four, five and six does not appear, as they were not included in the published acts.

The third section seeks to validate whatever the corporation had done before the passage of the act, provided it would comply with the act within ninety days from and after its passage. That presupposes, of course, that the prior acts and doings of the corporation were invalid for some reason—perhaps because it had not complied with the pre-existing laws, which made such compliance a prerequisite to its carrying on of any business in this state. But we have seen that this foreign corporation had, previous to the passage of the act of April 4, 1897, been carrying on business in strict compliance with the then existing laws, and that the subject of this litigation con-

stitutes a business which it was fully authorized to transact at the time, and had transacted.   To say that, because the plaintiff corporation did not strictly comply with the act of April 4, 1887, within the ninety days named in the third section of that act, all its business lawfully transacted before the passage of the act was consequently invalidated and rendered null and void, would be to say that the state could and did in that instance in a sense impair the obligation of its implied contract with foreign corporations in granting them the privilege of doing business within its borders upon compliance with existing laws.

It is but fair to call attention to the fact that the act does not state that a non-compliance within the ninety days would invalidate all business transacted previous to the passage of the act, but only that a compliance will render all such transactions of business valid; and hereof it must be said, further, that the legislature doubtless meant to say that when a foreign corporation had been carrying on business before the passage of the act, without complying with the then existing laws on the subject, and its business therefore was of questionable legality, to say the least, yet, if it would comply with the terms of the act within the ninety days, all doubts would be removed, and all its previous acts validated.   It doubtless never had any reference to business previously carried on in strict compliance with the law.   Especially should this view be taken, when, as in this case, the whole object of the act of 1887 had been fully accomplished by the certificate filed by the corporation in 1883, by which it had appointed its agent, named his place of business, and obligated itself to be bound by any service of process made upon him there; and the presumption is that its two directors and its secretary, with the use of its corporate seal, had the authority under the laws of Great Britain or the by-laws of the corporation, or both, to do this very thing.   At all events, having done so in the manner it did, and acted on the fact of having done so, it would not be allowed to disclaim the authority of its agent, these directors, and its secretary.

This objection to the certificate that it was not made by the president, and therefore did not comply with the act of April, 1887, was exceedingly technical, seeing that it really

stated every fact and accomplished every purpose which the later act was designed to state and to accomplish.

The defendant assumed to prove, as he had alleged, that the plaintiff corporation had not complied with the law in the respect named. He, in fact, alleged only that the plaintiff had not sufficiently complied with the law in the manner of its appointment of John M. Rose, Esquire, and for evidence in support of his allegation to this effect refers to the certificate of Mr Rose's appointment, which is copied in the record. Might there not have been another certificate of appointment? This theory is not negatived by anything in the answer. Otherwise than is shown in the alleged defects in the certificate of appointment of Mr. Rose, there is neither allegation nor proof of non-compliance with the law on the part of the plaintiff; and yet it was for the defendant to affirmatively show that the proper certificate was not filed in the secretary of state's office within the ninety days next succeeding the passage of the act of 1887; for, until the contrary is shown, a compliance with the law on the part of every one is to be presumed.

The decree is reversed, and the cause remanded, with di rections to foreclose the deed of trust.