HARTZO *v.* WILSON.

4-7092                                                171 S. W. 2d 956

Opinion delivered June 7, 1943.

*Claude E. Love,* for appellant.

*R. H. Peace* and *Surrey E. Gilliam,* for appellee.

GRIFFIN SMITH, C. J.   Defense to suits in replevin was that loans were at usurious interest.[1] From a plaintiff's verdict, holding that obligation attached in part, the defendant has appealed.

The issue is whether written contracts for storage became parts of original loans; and, if so, were they covers for interest in excess of that permitted by law?[2]

Appellee, a resident of Hot Springs, does business as Porter Wilson Finance Company. In November, 1940, he accepted O. D. Hartzo's note for $98.[3] A companion note was for $29.75.[4]

February 24, 1941, appellant borrowed $280, payable $40 per month, with interest at six percent until maturity and ten percent thereafter. A twin note was for $63, payable in monthly installments of $9. Interest was computable in a manner similar to that provided for in the $280 note.

---

[1] At conclusion of all testimony each side requested an instructed verdict, without more. The causes were accordingly withdrawn from the jury.

[2] Act 19, § 13, Constitution of 1874. Pope's Digest, § § 9401, 9402, 9403.

[3] The note was payable in seven monthly installments of $14, beginning December 15, with interest at six percent from date and ten percent after maturity.

[4] Payments were $4.25 per month, with interest similar to that of the $98 note.

The $63 and $29.75 commitments were supported by contracts designated "Storage Agreement." A passenger automobile, two trucks, and certain oil field machinery and equipment, were included in two mortgages.

When appellant defaulted after making certain payments, appellee, as an incident to his suit, procured an order for possession of the property. A retaining bond was executed.

The court, in holding against the plea of usury, gave judgment for $375, with interest at ten percent.

On the storage count it was held that because appellant did not avail himself of the privilege of user accorded in the contracts, no charge should be made.

Hartzo testified that he borrowed $98, as shown by his note of November 19, but received only $93. Deduction of $5 was for insurance. From the $280 loan, $19.15 was retained for insurance, leaving net $260.85.

Wilson's explanation was that policies were procured in Hartzo's name, with loss payable clauses in his (Wilson's) favor to the extent of the loans. Hartzo did not ask that the policies be delivered to him. There is no evidence they were not properly issued.

Appellant agreed to have the property insured, and is in no position now to complain of lawful transactions as to which he acquiesced. There is no proof the insurance was a subterfuge. *Matthews* v. *Georgia State Savings Association*, 132 Ark. 219, 200 S. W. 130, 21 A. L. R. 789.

A different situation exists as to storage contracts. Wilson's testimony included the statement: "We don't lend on the basis of rate of interest. We have one basis of lending, and that is the storage basis."

Appellee was asked: "In the final analysis, your requirement, before lending the money, was to include a charge of $9 a month [in respect of the $280 note] for service and storage, and [Hartzo] could store [the property] if he wanted to; if not, he could keep it." Answer: "That is right so far as the storage was concerned." . . . Question: "You would not let him have the

money otherwise?" Answer: "No, sir. We have a storage agreement to take care of all of that stuff."

While testifying that he at one time had arrangements with an El Dorado garage whereby loan customers could store mortgaged property, Wilson admitted that for six months he had not been represented in Union County, and at the time of trial nothing was in storage.

Although in a succeeding statement appellee asserted storage was covered by contracts independent of the mortgages and notes, it is clear there was never more than an evanescent thought to make use of facilities for which monthly charges of $4.75 and $9 were added to principal undertakings.

That appellant did not use the space appellee says was reserved for him is in no sense controlling. The charges would not be legally objectionable if the parties had in fact contracted for a service. Wilson testified that he discounted notes in Chicago. In negotiations with Hartzo by letter,[5] Wilson apparently sought to leave the impression that he had a limited authority. The statement is: "Rather than wait to write, I talked to Chicago this morning. After explaining your situation fully they agreed to take the new paper on your two trucks and equipment up to the maximum amount of $280." Then he said: "The Company agreed to take it up to a seven-month basis, which is based on seven forty-dollar payments, . . . plus $9 storage and service charge."

Whether the notes and mortgages were sold to the "Company" is of no importance. If loans were conditioned upon collateral commitments for additional payments, (without which money would not have been advanced) and the secondary transactions bore no substantial relationship to the primary contracts, but were covers to conceal usurious interest, such deception will be construed in the true aspect framers of the Constitution thought essential to a sound public policy.

Appellee is not helped by the decision in *Cain* v. *Stacy,* 146 Ark. 55, 225 S. W. 18, where the court held

---

[5] Wilson to Hartzo, February 25, 1941. Defendant's exhibit 1.

that the defense of usury had not been sustained by a showing that Stacy was to be paid $50 a month to manage rice-growing operations. There was a definite finding that because of Cain's dissipation, supervision of the mortgaged property was essential. Other cases cited by appellee involve the same principle. Even *Hogan* v. *Thompson,* 186 Ark. 497, 54 S. W. 2d 303 (and this is certainly a border-line case which goes far in sustaining a collateral contract) involved an element not present in the instant appeal. Ten-dollar coupons, redeemable in merchandise, were sold by Anne Thompson for $7.50. The appellee was engaged in the loan business, and was also agent for a mercantile firm. The firm accepted the coupons and presumably delivered an equivalent in value. In affirming the trial court's finding against usury, Mr. Justice BUTLER said the constitutional inhibition against usury ". . . cannot be avoided by any trick or device, and the courts will closely scrutinize every suspicious transaction in order to ascertain its real nature."

It is true, as Judge BUTLER said, that the burden rests upon the party pleading usury to establish it in the lower court by a fair preponderance of the testimony, ". . . and it must appear that there was an intent by the lender to exact more than the lawful rate of interest."

On appeal we determine whether the verdict, if returned by a jury, or the court's finding of facts, if there is no jury, is sustained by substantial evidence.

Our conclusion is that Wilson's admissions, considered in connection with other undisputed facts, leave little room for construction. Appellant met the procedural burden and the judgment is without substantial support.

Reversed, with directions to sustain appellant's plea of usury.