GENERAL CONTRACT CORPORATION *v.* DUKE.

5-463                                           270 S. W. 2d 918

Opinion delivered July 5, 1954.

[Rehearing denied October 4, 1954.]

*Rector, Cockrill, Limerick & Laser,* for appellant.

*Tom Gentry,* for appellee.

ED. F. McFADDIN, Justice. This is a usury case, involving a note given for the purchase of an automobile; and the transaction occurred *after* the effective date of the holding in *Hare* v. *General Contract Purchase Corp.,* 220 Ark. 601, 249 S. W. 2d 973. In the present case the Lower Court cancelled the note as usurious, and the noteholder has appealed.

On October 6, 1952, appellee Duke purchased a 1950 Oldsmobile from Dutch O'Neal's Auto Town No. 2 (hereinafter called "O'Neal"). Here are the figures on the invoice delivered to appellee:

| | | |
|---|---:|---:|
| Price of Oldsmobile | | $2,117.00 |
| Less Value of Buick Traded | $677.00 | |
| Cash Paid | 50.00 | 727.00 |
| | | |
| Balance due | | $1,390.00 |
| Insurance and Carrying Charges | | 333.44 |
| | | |
| Amount of Note Signed by Duke | | $1,723.44 |

This note was payable $71.81 per month for 24 months. O'Neal speedily transferred the note to the present holder, the appellant General Contract Corporation (hereinafter called "General Contract").

The issue here involved grows out of the item, "Insurance and Carrying Charges, $333.44." On November 20, 1952, Duke brought this suit against General Contract and O'Neal, claiming that the transaction was tainted with usury and void because the total amount charged him for interest and insurance was $333.44; that the insurance premium was only $153.00, leaving a balance of $180.44 for interest; and that the $180.44 was a usurious charge. The defendants denied the claim of usury, but only General Contract appeared at the trial.

Duke introduced the insurance policy issued and delivered to him; and it described the car and showed the total premium for insurance to be $153.00 for the 24-months coverage. Deducting the $153.00 from the $333.44, there was thus left a balance of $180.44 for interest; and Duke proved by a certified public accountant that interest of $180.44 would exceed by $7.86 the maximum of 10% allowed by law.

For defense, General Contract offered evidence to show that it purchased the Duke note from O'Neal the day after its execution; that General Contract shortly learned that the insurance premium of $153.00 had been misfigured; that the correct premium was $171.00; and that General Contract actually paid $171.00. General Contract claimed that the addition of $18.00 to the insurance premium would prevent the transaction from being usurious.

Duke showed that the matter of the additional insurance premium paid by General Contract was never communicated to him until several days after he had filed this suit, and that he never agreed in any way to any increase of the insurance premium from $153.00. Thus the issue was whether at the time the contract was made, it was agreed that the insurance premium would be $153.00. If it was so agreed, then the amount charged for interest was usurious. Art. 19, § 13, of our Constitution reads:

"All contracts for a greater rate of interest than ten percent. per annum shall be void, . . ."

Our cases hold that the transaction is to be judged at the time the contract is entered into, and not thereafter. If it had been established that there had merely been a mistake in determining the amount of the insurance premium, then the mistake could have been corrected by General Contract, notifying Duke within a reasonable time; but here there was no notice to Duke until after the suit had been filed, and that was more than a month after the original transaction. The Chancellor in

deciding the case rendered a written opinion, from which we copy the following:

"It is admitted that at the time of the execution of the contract an insurance policy was issued in the American Fidelity Fire Insurance Company for a total premium of $153.00. . . . The amount of insurance contracted for at the time of the execution of the contract is of extreme importance since it seems to be undisputed that if the insurance premium contracted for was $153.00, the remaining charges, or the difference between $333.44 and $153.00, would constitute a usurious charge. The testimony was to the effect that after the contract was entered into, General Contract Corporation increased the insurance both by change in symbol and change in amount. Actually, according to the testimony, the insurance contract was rewritten and was an entirely different contract than that agreed upon between the seller and the plaintiff, Duke.

"The test of usury is whether a borrower promised to pay a greater rate of interest than the law permits, and whether the lender knowingly entered into a usurious contract. *Commercial Credit Plan* v. *Chandler,* 218 Ark. 966, 239 S. W. 2d 1009. . . .

"Our courts have many times held that the test of whether a contract is usurious is to be applied to the facts which exist *at the time the contract is made. Habach* v. *Johnson,* 132 Ark. 374, 201 S. W. 286. This case is authority for the statement that if the contract is usurious in its inception, no subsequent offer to remit the usury can give it validity. The court is of the opinion that in order to purge a contract which is usurious at the time it is entered into, there must be a subsequent agreement between the parties, and that the unilateral act of one of the parties, uncommunicated to the other party, is not sufficient to remove the taint of usury. It cannot be said here that the case involves a mutual mistake of fact, since the plaintiff merely accepted the terms given him by the seller. In view of the absence of any subsequent agreement to purge the usury in the contract executed between

the parties, the court must find that contract to be usurious, and the judgment will be entered for the plaintiff."

The decree of the Chancery Court is affirmed.

Justices WARD and ROBINSON dissent.