WHIDDON *v.* UNIVERSAL C. I. T. CREDIT CORP.

5-1195                                    301 S. W. 2d 567

Opinion delivered May 6, 1957.

*Melvin T. Chambers,* for appellant.

*Wright, Harrison, Lindsey & Upton,* for appellee.

SAM ROBINSON, Associate Justice. The issue here is whether a usurious rate of interest was charged on the balance owed on the purchase price of an automobile. Appellant, Glen Whiddon, purchased from Dolly Parker Motors, Inc., of Magnolia, Arkansas, an automobile for the price of $2,201.98. Whiddon was allowed $1,501.98 on his old car, leaving a balance of $700. He bought, through the automobile dealer, collision insurance, for which he was charged a premium of $210. He was also charged $143.36, which included the premium for a life insurance policy, the premium on a disability policy, and the interest on the entire balance owed. The contract, as finally consummated, showed a balance owed of $1,053.36, payable in twenty-four monthly instalments of $43.89 each. The contract was transferred by the dealer to Universal C. I. T. Corporation. Whiddon made five monthly payments, and then filed this suit to void the contract on the alleged ground of usury. Both the dealer and the credit company were made defendants.

At the trial, the defendants introduced evidence to the effect that when the credit company bought the contract it was discovered that Whiddon had been charged a premium of $210 for collision insurance, whereas he should have been charged $51 less than that amount; and the defendants introduced evidence to the effect that

Whiddon was given credit for the $51 overcharge, plus $8.04 interest thereon, and that he was notified of such credit. Whiddon denies receiving any information about being given a credit.

This case turns on the point of whether the $51 charged excessively as a premium on collision insurance, plus interest thereon, was an honest mistake or whether it was a subterfuge to cover up an illegal rate of interest. The circumstances arouse suspicions of usury. In the first place, the purchase contract is prepared on a form furnished by the defendants, and the collision insurance premium is not referred to as a premium for insurance, but is designated "territorial differential." There is no way of determining from the contract that territorial differential means collision insurance, and we have found no other way of making such determination from any other source of authority.

But another item arousing even greater suspicions is the manner in which the defendants handled the interest charge, and the premiums on the life insurance and disability insurance. These three items were lumped together, and a charge made of $143.36, in the contract prepared on defendant's form. From the evidence introduced in the case, but not from the contract, it can be determined that $42.13 was for life insurance and $2 was for personal accident insurance, which would leave $99.23 charged as interest. The $143.36 charge appears as Item 7 in the purchase contract, as follows: "7. Finance Charge (including insurance not in Item 4)." It will be recalled that Item 4 was "territorial differential". It is impossible for the purchaser or his lawyer to examine the contract of purchase and determine the amount of interest charged. In fact, Mr. Ramsey, an employee of the finance company, a witness for defendants, testified that the $143.36 item was taken from a rate chart furnished by the finance company, and it was impossible for the dealer to determine from the chart the amount that was interest and the amount that represented insurance.

The interest charged on the transaction, after the $8.04 credit on interest, totals $91.19, which does not amount to usury if the excessive premium charged and the interest thereon was a mistake and was not a part of a scheme and device to hide a usurious charge. There is no showing that the premiums finally charged on the insurance are exorbitant and there is no showing that the appellees made a practice of charging an excessive amount as an insurance premium. In other words, there is nothing here to show that the situation presented is anything other than an isolated instance of its kind.

Mr. T. J. Patterson, who lives in El Dorado, and is district manager for the credit company, testified that the overcharge was a mistake; that Mr. Whiddon was due the rebate on the premium because the car was not used in business and no one under twenty-five years of age drove it; that he personally wrote Whiddon informing him he was being given credit for the overcharge, and that this letter was written just two days after the credit company purchased the contract. The trial court had an opportunity to observe the witness and was in a much better position than this court is to judge his credibility. We cannot say the trial court reached the wrong conclusion, notwithstanding the suspicious circumstances above mentioned. In deference to the trial court's conclusion as to the veracity of the witness, the decree is affirmed.

Millwee, J., dissents.