JONES *v.* JONES.

5-1281                                       301 S. W. 2d 737

Opinion delivered May 13, 1957.

*Ted Goldman* and *Chas. C. Wine,* for appellant.

*Shaver, Tackett & Jones,* for appellee.

GEORGE ROSE SMITH, J.   This is a suit by the appellee to cancel an assertedly usurious contract by which he bought a car from the appellant, an automobile dealer.   The appellant contends that he did not intend to charge excessive interest and merely made a mistake in the amount of the premium for insurance on the vehicle. The chancellor found the agreement to be void for usury and ordered its cancellation.

The net price for the car, after an allowance for the value of a mortgaged truck that was traded in by the buyer, was $957.   By the contract the buyer was required to pay $1,200 in twenty-four equal monthly in-

stallments. It is conceded that the difference of $243 was intended to represent nothing except interest and insurance. The actual insurance premium was at the rate of $118 for the two years, which leaves an apparent interest charge amounting to more than ten per cent per annum. The appellant insists, however, that by mutual mistake the contract was prepared upon the erroneous assumption that the insurance premium would be $140, which would bring the amount attributable to interest within the legal limit.

The chancellor's rejection of this contention is not against the weight of the evidence. The appellant testified that before preparing the contract he telephoned an insurance agent and was told that the premium would be $140. He says that he passed this information on to the appellee. The latter denies that the amount of the premium was ever mentioned. He says that he signed the contract in blank upon the understanding that the seller would insert the correct charge for the insurance on the car. Upon either of these versions the mistake, if it actually occurred, would evidently be a mutual one.

The appellant's testimony is corroborated only by the fact that the correct premium would have been $140 if the purchaser had meant to use the car in his business as a plumber. There is at least some evidence to support the view that the vehicle was to be so used, and we are asked to find that the premium should in fact have been $140. This request is beside the point, for the question is whether the parties agreed to a contract affording the lender an excessive rate of interest. If the evidence requires an affirmative answer to that question, it is plain that the agreement cannot be purged of usury by the extraneous fact that the insurer might have charged a greater premium if it had chosen to do so.

There are several circumstances tending to rebut the appellant's insistence that a genuine mistake occurred. First, the supposed error is attributed solely to the incorrect information that the appellant says he received from his insurance agent. That this agent was

not called as a witness, nor his absence accounted for, suggests that his testimony would not have been favorable to the appellant. *Rutherford* v. *Casey,* 190 Ark. 79, 77 S. W. 2d 58.

Second, the written contract contains no statement whatever of the amount to be paid either as interest or as the premium for insurance. On its face the agreement appears to be usurious, for it recites only the factors making up the net price of $957 and the buyer's obligation to pay $1,200 in twenty-four installments of $50 each. When, as here, the lender writes the contract he has the opportunity to put down in black and white an intelligible description, and the exact amount, of every charge that is being added to the principal of the debt. Last week we pointed out that the practice of attaching meaningless labels to such charges weakens the lender's position when usury is asserted. *Whiddon* v. *Universal C. I. T. Credit Corp.,* 227 Ark. 824, 301 S. W. 2d 567. The same criticism can fairly be made of a contract that gives the borrower no information at all about the deferred charges being exacted by the lender. In either case the trier of the facts is justified in assuming, until he is convinced by proof to the contrary, that the difference between the principal of the loan and the face amount of the contract represents interest on the debt.

Third, the appellant paid the insurance premium within four or five days after the sale of the car and must then have known with certainty that an overcharge had been made. Unlike the lender in the *Whiddon* case, *supra,* the appellant made no effort to inform the borrower of the overcharge until after this suit had been filed, some months later. It is indicated by the appellant's testimony that he considered himself entitled to the windfall resulting from his mistake, as he assumed that he could not have collected from the borrower if the mistake had been in the latter's favor. To accept this explanation as a basis for upholding the contract would

establish a precedent giving every lender unlimited freedom to make similar mistakes without risking the penalty of usury.

Affirmed.