JAMES HARRIS ET AL v. GUARANTY FINANCIAL CORPORATION

5-4243                                    424 S. W. 2d 355

Opinion delivered February 26, 1968

*H. Clay Robinson* and *Harry C. Robinson,* for appellants.

*Griffin Smith,* for appellee.

BRUCE H. SHAW, Special Justice. In this appeal appellants seek to void a promissory note on the ground of usury. The Chancellor entered a judgment on the promissory note against appellants in the sum of $5,-941.00 with interest at the rate of 10% per annum from the date of the judgment until paid.

The pertinent facts as disclosed in the transcript are not disputed. On March 6, 1963, appellants, James Harris and his wife, Elsie Lee Harris, entered into a construction contract with Joe Lee Homes, Inc. for the construction of a shell home. The construction contract provided that the appellants would pay $10.00 in cash on signing the construction contract, receipt of which was acknowledged, and a balance of $5,825.00 payable in monthly installments of $69.61 each, beginning May 1, 1963. The construction contract also provided that the appellants would execute a promissory note and deed of trust.

The promissory note and deed of trust were also executed March 6, 1963. The note and deed of trust provided for an indebtedness of $5,825.00 with interest from

the date of execution until paid at the rate of 10% per annum, payable in 144 consecutive monthly installments of $69.61, the first installment due May 1, 1963. The note provided that in the event of default for a period of one month or more the entire principal indebtedness with accrued interest at the option of the holder would become due and payable. It also provided for payment of attorney's fees and cost of collection together with other provisions not material to the issues in this appeal. The promissory note and deed of trust was assigned by Joe Lee Homes, Inc. to appellant, Guaranty Financial Corporation. Appellants defaulted on the installment due August 1, 1965, and the principal balance due at that time was $5,216.36.

Appellants contend that the note was usurious for the reasons that:

(1)  A 5% late charge was assessed on the monthly payments after default.

(2)  That interest computed on a daily basis rendered the transaction usurious because of an improper credit of the escrow account.

(3)  That a $50.00 charge for title work was improper and should be charged to interest.

(4)  That the $10.00 cash down payment called for by the construction contract rendered the transaction usurious.

Appellee denies that the inclusion of any of the items mentioned rendered the transaction usurious.

After appellants' default on the August 1, 1965, payment, appellee, in its subsequent collection letter, assessed a charge for delinquency of an additional $3.83. The appellants contend this late charge should be included as interest to test the transaction for usury. In *Carney* v. *Matthewson,* 86 Ark. 25, 109 S. W. 1024, a promissory note with an interest rate at 10% per annum provided that if the interest was not paid annually it would

become a part of the principal and thereafter bear interest as principal. The Court held that the late charge provided in the instrument after delinquency was a penalty and did not render the transaction usurious. In *Phipps-Reynolds Co.* v. *McIlroy Bank & Trust Company,* 197 Ark. 621, 124 S. W. 2d 222, the Court held that the lender, in considering delinquent interest to be part of the principal and to also bear interest, did not thereby render a transaction usurious. The late charge in the instant action was not agreed upon between the parties to the note and construction contract. The attempt to collect the $3.83 in the collection letter which is in the nature of a penalty for delinquency does not render the transaction usurious.

After default appellee computed interest from August 1, 1965, until February 1, 1966, as $304.22. This interest computation, which is $1.43 daily, appellants contend renders the transaction usurious if the balance in the escrow account of $60.85 is credited against the unpaid principal of $5,216.36, thereby reducing it to $5,-155.51. It is not disputed that the escrow account was properly maintained. Suffice it to say that any credit of the balance in the escrow account would be applied first to interest and then to principal. To test a note and interest for usury the escrow account cannot be credited against the unpaid principal because the transaction must be viewed at the time consummated and not in relation to a balance that might thereafter accumulate in the escrow account. Appellants cite no authority which would justify applying an escrow account balance in such a manner. In other words, the balance in the escrow account cannot be used to test the transaction for usury when the underlying note and the interest thereon is lawful and does not exceed the 10% per annum maximum limitation imposed by the Arkansas Constitution.

The proof reflects that a charge was made and agreed to of $50.00 for "title work"; that this $50.00

was expended by the lender as a premium for title insurance, insuring the title of the mortgaged property. In support of their contention that the $50.00 charge for title insurance premium and the $10.00 down payment used for a credit report were improper and rendered the transaction usurious, appellants cite *Schuck* v. *Murdock Acceptance Corp.*, 220 Ark. 56, 237 S. W. 2d 1 (1952), *Hare* v. *General Contract Purchase*, 220 Ark. 601, 249 S. W. 2d 973 (1952), and *Winston* v. *Personal Finance Company of Pine Bluff*, 220 Ark. 580, 249 S. W. 2d 315 (1952), and state that these cases establish a rule that a lender may not assess service charges and increase the cash price for merchandise. These three cases involve consumer purchases or consumer loans and are not construction contracts as presented here. In *Schuck* v. *Murdock, supra,* the Court found the seller and the finance company listed a cash price for an automobile and after allowance of a down-payment and a trade-in, added on certain charges. The Court found on the facts that the add-on was an unauthorized charge in an attempt to evade the usury prohibition.

In *Winston* v. *Personal Finance Company, supra,* a loan was made of $108.00 evidenced by a promissory note. The borrower, Winston, received only $95.04. The note was for twelve (12) months and payable at $9.00 per month with interest on each monthly installment. The evidence disclosed that interest was calculated to be $5.40 with a service charge of $7.56 resulting in the $12.96 difference between the face amount of the note and the $95.04 Winston received. The Court found that of the $7.56 labeled as service charge, $3.76 was received by the lender for services of its salaried employees. The Court specifically finds that the $3.76 exacted for services performed by the lender's employees and fifty cents for a credit report were in reality "nothing more or less than interest charge". The Court, at page 585 of 220 Ark. states the following expenses may be charged by a lender in addition to the principal balance:

"The items 'b' and 'c' were the ordinary incidental expenses incurred by Personal in the course of its business. They were not items paid by Personal to a third person for the benefit of Winston. They are not like the cost of (1) an abstract paid to a third person, or (2) a title opinion paid a lawyer, or (3) recording fees paid an official, or (4) insurance premiums paid a third party. These four numbered items just mentioned may be legal and valid charges when they are paid to a third party. We have upheld such fees in a number of cases, but the facts in each of those cases were different—in a most important particular—from those in the case at bar; because here, the fees, or 'service charges', were made by Personal to cover its own overhead costs and therefore were, in all essentials, interest on the money loaned."

The Winston case holds that whether a particular charge is improper depends upon the facts and circumstances of each case. The Winston case establishes guidelines to test a transaction to determine whether or not a particular charge is a proper one. On the particular facts in that case the Court held that the charge for a credit report was not proper and should be considered as interest in determining the question of usury. We do not interpret this case to hold as a matter of law charges for credit reports are never proper. Whether a given charge may be properly made is a question of fact. Whether or not a particular charge is for the sole benefit of the lender or the mutual benefit of both the lender and the borrower is one element to be considered in determining the propriety of the charge. Another element is whether the charge received by the lender was actually disbursed to a third party for services rendered in the loan procedure or pocketed by the lender as an application on his overhead for doing business. It can be readily seen that many charges which have been specifically approved by the Court, such as charges for title work, abstract opinions, are charges beneficial to the lender as is a credit report but no case has held that these

charges as a matter of law are improper solely because they benefit the lender.

The $50.00 charge for title work in the instant case is a proper one and includable in the selling price when specifically authorized by the purchaser-buyer. The parties in this contract specifically agreed that title work was to be done and its cost was included in the construction contract. We can see no distinction between expending the $50.00 for title insurance premium and the use of the agreed sum in abstract expense and other title expense incident to the transaction. It was not added on to the financed balance of the construction contract as an additional charge. Appellants cite *Universal C. I. T.* v. *Lackey*, 228 Ark. 101, 305 S. W. 2d 858, and *Lowrey* v. *General Contract Corporation*, 228 Ark. 685, 309 S. W. 2d 736, and contend that this charge for title work should be considered interest. These cases cited by appellants involve add-on charges in automobile transactions for credit life insurance and are not analogous to charges for title work in real estate transactions which have been specifically approved by this Court.

In *United Built Homes* v. *Knapp*, 239 Ark. 940, 396 S. W. 2d 40, the Court found that certain closing cost items rendered a transaction usurious when it appeared that charges for credit life insurance and appraisal fees were not expended. The Court, however, states that appraisal fees and other charges under proper circumstances can be collected as proper closing costs. In the instant case the record discloses that all of the charges were expended for specifically the items called for and were not used as a sham to increase the interest rate.

In *Mid-State Homes, Inc.* v. *Knight*, 237 Ark. 802, 376 S. W. 2d 556, appellant Finance Company was the holder of a note in the principal sum of $3,830.00 payable in 72 monthly payments of $53.20 each. The purchaser disputed certain items for materials and labor and contended the transaction was usurious. The Court found the builder's profit exceeded 10% of the contract price but that the profit on the underlying construction

contract had no bearing on the issue of usury. It was shown that the builder and the finance company had identical corporate structures and officed at the same address. The Court did not find the transaction to be usurious as it distinguished between a loan and a construction contract. The same situation is presented in the instant case. The construction contract in this action signed by the parties provides for a price of $5,-835.00 with a $10.00 cash payment for a financed balance of $5,825.00. The terms of the note are identical to the terms of the construction contract as to the financial balance and does not exact a rate of interest that is usurious.

The $10.00 cash payment which is reflected in the contract signed by appellants was not added on to the financed balance in such a manner as to raise the financed balance $10.00 and include interest thereon. The contract clearly provides that the financed balance is $5,825.00 just as it appears on the promissory note. This same construction contract was presented to this Court in *Guaranty Financial Corporation* v. *Harden*, 242 Ark. 779, decided June 5, 1967. In that case the appellee here, who was the appellant then, relied upon a building contract, note and mortgage. The Court, in *Guaranty Finance Corporation* v. *Harden*, at page 780 of 242, states:

> "The building contract, note, and mortgage were all executed together on October 1, 1965. The building contract was the basic instrument. By that contract Joe-Lee Homes agreed to construct a specified dwelling house for the Hardens for $6,288.00. The contract, after reciting a down payment of $10.00, goes on to say: 'The balance of $6,278.00, plus interest, shall be paid in monthly installments of $75.01 beginning on the 1st day of January, 1966, and on the first day of each succeeding month thereafter until the whole of said indebtedness is paid. The Owner has concurrently herewith executed a

promissory note and mortgage to cover the balance.'

"When the building contract and promissory note are read as one contract, as our decisions require us to do, it is crystal clear that the original principal debt was $6,278.00, with interest which can readily be calculated to be slightly less than the legal rate of 10 per cent per annum. All that the plaintiffs seek to recover is the unpaid principal plus accrued interest. Hence, the case falls precisely within our holding in *Mid-State Homes* v. *Knight*, 237 Ark. 802, 376 S. W. 2d 556 (1964), where we said: 'The chancellor in holding the instrument to be usurious, apparently based his decision upon the fact that the appellant had exercised its option to accelerate the maturity of future payments and had filed suit for the full amount without making any deduction for the interest that had not yet accrued. This procedure, however, did not render the transaction usurious. In such a situation the court should merely refuse to permit the creditor to recover the unaccrued interest. *Eldred* v. *Hart*, 87 Ark. 534, 113 S. W. 21; *Sager* v. *American Investment Co.*, 170 Ark. 568, 380 S. W. 654.'"

The Court in that case recognized that the financed debt was $6,278.00 with a $10.00 down payment, or a total price of $6,288.00. The Court found the contract and note were not usurious because the interest calculated on the financed debt of $6,278.00 was less than the maximum legal rate of 10% per annum. To the same effect in this case the principal balance that is financed is $5,-825.00 and is so recited in the contract and note. Assuming that the $10.00 item which is recited in this contract as cash down payment should be considered in testing the transaction for usury, the written contract provides that:

"In the event a credit report on the Owner unsatisfactory to the Builder is received prior to beginning construction of the house, Builder at its option

may within ten (10) days thereafter cancel this agreement upon returning to Owner all of the deposit except the cost of the credit report and anv recording fees.''

The only proof with reference to the $10.00 charge having been expended for a credit report was the testimony by the lender's Vice President.

Assuming the burden of proof shifted to the lender to explain the charge as required by *Jones* v. *Jones,* 227 Ark. 836, 301 S. W. 2d 737 (1957), the trial court found that the $10.00 charge was not improper. The record contains no evidence which would support a contrary finding. The uncontradicted testimony of the lender's Vice President was that the customary practice of the business was to obtain a credit report and such affirmative testimony was not contradicted. The testimony on this point was meager but was sufficient for the trial court to find that the appellee had met its burden of explaining the Ten Dollar charge and there is no evidence in the record to the contrary. The credit report was specifically provided for in the construction contract and was not an add-on item which the appellee put in its pocket under the ruse of a service charge. The $10.00 was not included in the principal balance of the promissory note and there was no interest paid on it. There is nothing in the record that establishes any cash credit price differential as is sometimes present in consumer goods transactions. The inclusion of the $10.00 payment in the contract clearly provides for a financed balance of $5,-825.00 as evidenced by the promissory note in almost identical terms as approved in *Guaranty\Financial Corporation* v. *Harden, supra.*

For the reasons herein given, the decree of the Chancery Court is affirmed.

GEORGE ROSE SMITH, BROWN and BYRD, JJ., dissent. FOGLEMAN, J., disqualified.