UNIVERSAL C. I. T. CREDIT CORP. *v*. LACKEY.

5-1317                                    305 S. W. 2d 858

Opinion delivered October 21, 1957.

*Wright, Harrison, Lindsey & Upton* and *Norton & Norton*, for appellant.

*Giles Dearing*, for appellee.

ED. F. McFADDIN, Associate Justice. This is another case involving the claim of usury[1] in a conditional sales contract. The Chancery Court found that the contract was usurious, and this appeal ensued.

On November 19, 1953 appellee Lackey purchased a new 1954 Chrysler automobile from Bragg Auto Company of West Memphis by trading in an old car and executing a conditional sales contract for the balance due, plus insurance and interest. Here is a tabulation of the transaction:

---

[1] For some of our more recent cases on usury, in addition to those mentioned herein, see *Blalock* v. *Blalock*, 226 Ark. 75, 288 S. W. 2d 327; *Whiddon* v. *Universal C. I. T. Credit Corp.*, 227 Ark. 824, 301 S. W. 2d 567 (opinion of May 6, 1957) ; and *Griffin* v. *Murdock*, 227 Ark. 1018, 303 S. W. 2d 242 (opinion of June 17, 1957). See also the two articles in 8 Ark. Law Review, being, "The Usury Law of Arkansas," page 399; and "The Impact of Usury Laws," **page 420.**

| | | |
|---|---|---|
| 1. | Cash price of new car | $3,536.25 |
| 2. | Less Allowance for old car | 1,786.25 |
| 3. | Balance due in cash | 1,750.00 |
| 4. | Premium on Collision and Comprehensive Insurance[2] | 229.00 |
| | | 1,979.00 |
| 5. | "Finance Charge (including insurance not in Item 4)" | 364.88 |
| | Total due on contract | $2,343.88 |

The said amount of $2,343.88 was payable in twenty-three monthly payments of $60.00, and one final payment of $963.88. The conditional sales contract was on a form supplied by appellant, Universal C. I. T. Credit Corporation (hereinafter called "Universal"); and the finance charges and insurance charges were determined from information furnished by Universal. Bragg instantly transferred the conditional sales contract to Universal; so we treat Universal as having been the original lender.[3]

It is clearly established that the $364.88 as the "finance charge," in line numbered 5 in the tabulation above, is usurious on the $1,979.00[4]; and it was likewise conceded by appellee that if $95.75 of the said $364.88 be taken as insurance premiums paid for customer life insurance and limited personal accident insurance, then the remaining $269.13 is not usurious.[5]

I. *The Customer Life and Limited Personal Accident Insurance.* The first point in the case is, whether Lackey can be legally charged for $95.75 for premiums for the said customer life and limited personal accident

---

[2] Appellee admitted that this insurance item was explained to him at the time of signing the contract and that he ordered this particular insurance and thoroughly understood it. The insurance he is here contesting is that included in item numbered 5 in this tabulation.

[3] See *Hare* v. *General Contract Purchase Corp.*, 220 Ark. 601, 249 S. W. 2d 973; and *Griffin* v. *Murdock Acceptance Corp.*, 227 Ark. 1018, 303 S. W. 2d 242 (opinion of June 17, 1957).

[4] It was testified that this would be interest at 12.185 per cent per annum.

[5] It was testified that the rate of interest under such circumstances would be 8.79 per cent per annum.

insurance. Lackey admitted signing the contract; but he testified that he never agreed to take any such life and accident insurance and would not have taken it if he had been told about it. He testified that he never received the life and accident insurance policies; and contended that the $95.75 was a cloak for usury.

On the other hand, appellant established: (a) that Lackey signed an instrument requesting the customer life insurance and limited personal accident insurance; and (b) that Universal paid the premiums on these policies in the total amount of $95.75. The premium on the customer life insurance was $93.75 for the 24 months of the contract, and the premium on the limited personal accident insurance was $2.00 for the 24 months of the contract.

(a) *The Request for Insurance.* There was introduced in evidence the original conditional sales contract signed by Lackey, and in the face of that instrument there was a blocked off section headed in large capital letters: "Insurance Election." It was separately signed by Lackey; and read: "Customer elects to include the cost of customer life and limited personal accident insurance in the time balance." It was stated in bold capital letters that the insurance election was not applicable unless signed; and appellee Lackey signed this insurance election as the "person to be insured as above." Lackey did not deny that he signed the insurance election in addition to signing the conditional sales contract; but he claims that he was in a hurry and did not read what he was signing. That was his fault. In *Texas Co.* v. *Williams,* 178 Ark. 1110, 13 S. W. 2d 309, we quoted from *Upton* v. *Tribilcock,* 91 U. S. 45, 23 Law. Ed. 203, as follows:

" 'It will not do for a man to enter into a contract and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission.' "

So, since Lackey did not deny signing the request for insurance and did not establish that his signature was obtained by fraud, we take it as established that Lackey ordered the customer life and limited personal accident insurance.

(b) *The Premiums on the Life and Accident Policies.* It was established by overwhelming evidence that Universal paid $93.75 as the premium on the life policy, and $2.00 as the premium on the accident policy. Mr. Korn, the executive vice-president of the National Casualty Company, testified that his company had in effect an accident policy insuring Joe Lackey; that the policy was for two years; that the premium was $2.00; and that the Universal C. I. T. Credit Corporation paid the premium on the policy. Mr. Allen, the general manager of the sales department of the Old Republic Life Insurance Company of Chicago, Illinois, testified that his company had in effect a policy insuring the life of Joe Lackey from November 19, 1953 to November 19, 1955, in the sum of $2,343.88; that the premium on that policy was $93.75; and that Universal C. I. T. Credit Corporation paid the premium on said policy.

Lackey says that he never received the policies; but, even so, the companies testified that they issued them, that they were in effect for the time stated, and that appellant paid out $95.75 as premiums. Appellant's officers testified—and there is no evidence to dispute it—that these life insurance and accident insurance policies were optional with a person buying a car, and in no sense compulsory.

II. *The Result: No Usury Proved.* In this case the appellant has established that it paid out the insurance premiums of $95.75; and it is not shown or intimated that Universal or Bragg received any "kick-back" or commission on the insurance premiums; so there was nothing to be added back from the insurance premiums of $95.75 to the interest charge. When the $95.75 is deducted from the $364.88, the balance is $269.13; and that balance is admitted by appellee to be less than ten per cent per **annum.**

In *Briggs* v. *Steele,* 91 Ark. 458, 121 S. W. 754, this Court, speaking through Mr. Justice FRAUENTHAL, said of usury:

"To constitute usury, there must either be an agreement between the parties by which the borrower promises to pay, and the lender knowingly receives, a higher rate of interest than the statute allows for the loan or forbearance of money; or such greater rate of interest must be knowingly and intentionally 'reserved, taken or secured' for such loan or forbearance. It is essential, in order to establish the plea of usury, that there was a loan or forbearance of money, and that for such forbearance there was an intent or agreement to take unlawful interest, and that such unlawful interest was actually taken or reserved."

Tested by the above definition, and by our other cases, we conclude that, after deducting the insurance premium of $95.75, Universal did not receive a higher rate of interest than ten per cent per annum: so, there was no usury in this transaction.

III. *The Burden of Proof.* Even though we find no usury in this particular transaction, we think it well to mention the matter of burden of proof in cases like this one. In *Commercial Credit Plan* v. *Chandler,* 218 Ark. 966, 239 S. W. 2d 1009, we said:

" . . . where one resists payment of a *prima facie* obligation on the ground that the contract is tainted with usury, such defense must be established by clear and convincing evidence. *Baxter* v. *Jackson,* 193 Ark. 996, 104 S. W. 2d 202."

But in *Jones* v. *Jones,* 227 Ark. 836, 301 S. W. 2d 737 (opinion of May 13, 1957), we modified that rule—as to the burden of proof in cases like this one—to some extent by this language:

"When, as here, the lender writes the contract he has the opportunity to put down in black and white an intelligible description, and the exact amount, of every charge that is being added to the principal of the debt. Last

week we pointed out that the practice of attaching meaningless labels to such charges weakens the lender's position when usury is asserted. *Whiddon* v. *Universal C. I. T. Credit Corp.*, 227 Ark. 824, 301 S. W. 2d 567. The same criticism can be fairly made of a contract that gives the borrower no information at all about the deferred charges being exacted by the lender. In either case the trier of the facts is justified in assuming, until he is convinced by proof to the contrary, that the difference between the principal of the loan and the face amount of the contract represents interest on the debt.''

In short, where there is included with the carrying charges or interest charges some hidden and unitemized item—like the life insurance and accident insurance premiums in this case—then the lender has the burden of explaining in detail such hidden item, or the result will be to take the hidden item as a part of the interest. In the case at bar, the lender (Universal) satisfactorily met this burden by explaining the hidden item, and it was not intimated that Universal or Bragg received any ''kickback'' or commission for the insurance premiums. So, there was nothing from these items to be added back to the interest charge.

It follows that the decree of the Chancery Court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

MILLWEE and ROBINSON, JJ., dissent.