JOHN HENRY ANDREWS, ET AL V. BUFORD MARTIN, ET AL

5-4777                                                    436 S.W. 2d 285

Opinion Delivered January 27, 1969

*Lee Ward* for appellants.

*Frierson, Walker & Snellgrave* for appellees.

CARLETON HARRIS, Chief Justice. In the latter part of 1964, appellee John Shipp contacted appellants, a

negro couple of Jonesboro, relative to making certain improvements on their home. The terms of the agreement are very much in dispute, but it is established that two separate contracts were entered into between Shipp and the Andrewses.[1] The first contract provided for the installation of white wood grain aluminum siding on the entire exterior of the home, the installation of two aluminum storm doors, the placing of aluminum screens on windows, and some other items, at an agreed price of $2,250.00. Soon after the job was commenced, it was decided that additional work should be done, including a carport, a concrete driveway, the front porch being replaced with aluminum roof, a concrete floor, and certain other repairs, which, according to Shipp, totaled $1,250.00. The total cost of the entire job, according to this appellee, was $3,500.00. Shipp testified that appellants desired that a debt owed a Jonesboro bank on the property be added to the indebtedness, although the exact amount due was not known by the Andrewses. Shipp said he then contacted Buford Martin, the other appellee herein, relative to whether the latter would "finance" the transaction. On December 22, 1964, appellants and Shipp executed a contract calling for an expenditure of $2,250.00. Shipp testified that shortly thereafter, the second contract, calling for the expenditure of $1,250.00, was executed[2]. Shipp thereafter took the two contracts to a Blytheville attorney who regularly represented Martin,[3] and directed that attorney to prepare a note and mortgage in the total amount of the two contracts, plus the indebtedness due the bank, plus the fee for abstract work, the fee for preparing the instrument, and the cost of recording the deed of trust. The attorney complied with these directions, and pre-

---

[1]The record is quite confusing as to the name of appellants. Frequently, it is termed "Andrews," and about as frequently, termed "Andrew." The two names were even used during their testimony.

[2]Appellants denied signing a second contract.

[3]Not the same attorney representing appellee in this litigation.

pared a note in the amount of $4,306.15; a deed of trust was executed to secure that amount. The note and deed of trust were dated January 20, 1965, and bore interest at the rate of 10% per annum, payments to be made in monthly installments. On the next day, the instruments were assigned to Martin. In February, 1967, Martin filed suit, seeking judgment for the alleged balance due, and asking for foreclosure if it were not paid. The Andrewses answered, asserting that Shipp had been guilty of fraud; that they executed the papers (contract) given them by Shipp in blank, and that he had inserted as the price an amount not agreed upon; that he had altered the documents signed, and they denied that Martin was a holder in due course. Usury was pleaded, and appellants filed a cross-complaint against Shipp, asking for relief against him in case Martin was given judgment against them. He answered, denying any fraud or misrepresentation. Martin then replied to the Andrewses by asserting that he was a holder in due course of the note and deed of trust; that he had no notice of any defect, nor of any alleged usury in the original transaction. On trial, the court rendered judgment for Martin in the sum of $5,797.38, representing the balance due on the principal,[4] interest accrued to the date of hearing, abstract and insurance premiums paid by Martin, and an attorney's fee of $510.00, allowed under the provisions of the note. It was directed that, if the sum be not paid within 10 days, the property be sold by the commissioner of the court. From the decree so entered, appellants bring this appeal.

Three points are relied upon for reversal, but since we have concluded that the note was void because of usury, there is no need to discuss the other two contentions. The finding of usury is based upon the following facts:

Shipp testified that the first contract called for an

---

[4]According to Martin's bookkeeper, the Andrewses had only paid $74.26 on the principal, although the Martin complaint set out that a total of $720.00 had been paid on the note.

expenditure of $2,250.00. He also definitely stated that the second contract called for an expenditure of $1,250.00. The evidence established that the pay-off of the indebtedness due the bank amounted to $705.69.[5] The abstracting amounted to $22.00, legal services (in preparing the note and deed of trust), $20.00, and the charge for the recording of the deed of trust was $2.50. These items total $4,250.19. It is immediately apparent that this total is $55.96 less than the $4,306.15 called for by the note. The note itself provides for interest at 10% per annum from date until paid. Consequently, if all amounts mentioned are correct, a prima facie case of usury is made. The first contract was offered in evidence, and the amount of $2,250.00 is correct. There is no question but that the amount of the indebtedness to the bank was $705.69; nor is there any question but that the amounts listed for abstracting, legal services, and the recording of the deed of trust, are correct. Accordingly, the decisive item is the amount of the second contract. This contract was not offered into evidence; Shipp, however, stated definitely that it was in the sum of $1,250.00. Counsel for appellee Martin argues that there was testimony which indicates that the second contract was for a larger amount than that stated by Shipp, and he says simply that Shipp, relying on his memory, was in error in stating the amount called for in that agreement. The evidence that counsel refers to was given by Martin himself, who stated that he was present in the Andrews home when appellants, and Shipp were discussing terms of the proposed agreement(s). From Martin's testimony:

> "Well, of course, Mr. Shipp was talking to the Andrews about what was going to be done and I was interested, too, in what was going to be done as well since I was going to consider buying the paper from John Shipp so they was talking about what was going to be done in length, you know."

[5] The attorney who prepared the instruments testified that this was the amount of the check that Martin paid to the bank

When asked if he recalled the amount that was mentioned as the cost of the improvements, he replied:

"It was somewhere—it was $3,550.00, around $3,550.00. There was something said about $3,-550.00, then there was a question about a front door or something that they was talking about and I never did get that clear just what it was but there was $3,550.00 plus the pay off at the bank and I understood it was about—around or between $600.00 and $700.00 owed to the bank. * * *

"I remember $3,550.00 and then I remember them mentioning something additional but I don't know what that amounted to. * * *

"Yes, sir, Mr. Shipp and the Andrews talked about it and what I understood it was $3,500.00 for the repair on the house and then there was something else that they talked about afterwards."

We do not agree that this testimony is sufficient to show that the amount agreed upon was other than as testified to by Shipp. In the first place, appellants and Shipp were apparently discussing various items that might be included in the agreement, no definite figure being established at that time. Of course, there is nothing definite about a front door—and the figure relative to the bank indebtedness mentioned by Martin was certainly incorrect. It will also be observed that Martin finally said that he understood "it was $3,500.00 for the repair on the house and then there was something else that they talked about afterwards." This evidence falls far short of constituting proof that the second contract was for more than $1,250.00, or that the total on both contracts was more than $3,500.00. We are thus left with the figures relied upon by appellants to sustain the charge of usury, with no evidence in the record to contradict that contention. No effort was made to offer the second contract, nor was any reason given for its not being offered. This instrument, of course, would

have clearly shown the amount agreed upon. The attorney who drew the note and mortgage testified that he prepared same in accordance with the two contracts handed him by Shipp, but he was never asked the amount set out in either agreement. There being no evidence that the contracts were for a greater amount than $3,-500.00, the note was usurious on its face, and it was incumbent upon Martin to show otherwise. This is the effect of the holding in *Universal C.I.T. Credit Corporation* v. *Lackey*, 228 Ark. 101, 305 S.W. 2d 858. In *Jones* v. *Jones*, 227 Ark. 836, 301 S.W. 2d 737, we held that the trier of the facts is justified in assuming, until convinced by proof to the contrary, that the difference between the principal of the loan and the face amount of the contract (note) represents interest on the debt.

We also point out that neither appellee, in either the pleadings or the proof, asserted that a mistake was made, and that an erroneous amount was sought because of inadvertent error.

Of course, even a holder in due course, *i.e.*, one who takes an instrument for value, in good faith, and without notice of any defect, cannot rely upon this fact to defend against a claim of usury. If there is usury in the original instrument then the transfer of that instrument to a third party does not eliminate the maker's right to plead usury. *Lyles* v. *Union Planters National Bank*, 239 Ark. 738, 393 S.W. 2d 867. Actually, though not pertinent to this decision, it is doubtful that Martin could claim the status of a bona fide holder of the note, since he was really somewhat of a participant before the note and deed of trust were ever executed.

For the reasons stated herein, the decree is reversed.

It is so ordered.