NINETEEN CORP. v. GUARANTY FINANCIAL CORP.

5-4697                                          438 S.W. 2d 685

Opinion Delivered March 17, 1969

[Rehearing denied April 21, 1969.]

*John Harris Jones* for appellant.

*Coleman, Gantt, Ramsay & Cox* for appellee.

EMON A. MAHONY, Special Justice. This litigation originated in the Chancery Court of Jefferson County, Arkansas. The appellee was the plaintiff in the lower court. The complaint alleges that Guaranty Financial Corporation, the plaintiff, was the owner of all of the outstanding capital stock of Universal Insurance Company. That on or about October 1, 1967, it entered into a written contract with the defendant, Nineteen Corporation, a corporation organized and existing under and by virtue of the laws of Texas, whereby the plaintiff agreed to sell and the defendant agreed to purchase all of the outstanding common stock of the Universal Insurance Corporation pursuant to a written contract, a copy of which was attached to the complaint. The contract recites a cash consideration of $141,000 and a further consideration of the transfer of $175,000 in principal amount of first real estate mortgage loans qualifying as investments under the insurance laws of the State of Arkansas. The total consideration was therefore $316,000. The execution of this contract is admitted by the defendant, Nineteen Corporation.

The first sentence of paragraph 3 of the complaint reads as follows: "Subsequent to the execution of the contract for the sale of stock between the parties made Exhibit 'A' to this complaint, H. M. Weisenbaker, president of the defendant, requested the plaintiff to conclude the sale of the stock of Universal Insurance Company (which will hereafter be referred to for simplicity as 'Universal') by the exchange of a promissory note of Nineteen Corporation to be secured by a collateral pledge of the stock being purchased from Universal Insurance Company and a first mortgage lien upon certain real estate in Oklahoma City in lieu of the amount to have been paid in cash under the said contract for sale of stock." This sentence was also admitted to be true by defendant.

The next sentence of paragraph 3 of the complaint, that is, the second sentence, alleges as follows: "In

addition he requested that the amount of the qualifying first real estate mortgage loans to be transferred by the defendant to the plaintiff under the contract for sale of stock be reduced from $175,000 as therein provided to $147,557.24, which was the principal balance of first real estate mortgage loans held by Universal on October 23, 1967." The defendant denied the allegations of said second sentence of said paragraph 3 but admitted as alleged by the complaint that on October 23 it made, executed and delivered to the plaintiff its collateral promissory note and pledge agreement in the sum of $145,772.27 as described in the third sentence of said third paragraph. This new note was secured by a pledge agreement in which the 150,000 shares of common stock of the insurance company were pledged and there was also mortgaged an interest in certain real property in Oklahoma.

The original written contract of sale which provided for a consideration of $141,000 in cash and $175,000 in mortgage loans further provided that the $175,000 worth of mortgage loans paid as a portion of the consideration would be transferred by Guaranty Financial Corporation to the insurance company in exchange for first mortgage loans then on hand in the insurance company. No cash consideration was ever paid. A note in the sum of $145,772.27 was delivered on October 23rd to plaintiff, Guaranty Financial Corporation. On the same date, pursuant to the contract of sale, the then existing officers and directors of the insurance company resigned and the new stockholder, Nineteen Corporation, elected new officers and directors. The new officers and directors then transferred to Guaranty Financial Corporation the notes and mortgages held by the insurance company which had a principal amount of $147,557.24. Nineteen Corporation, however, never transferred any mortgage notes to Guaranty Financial Corporation which might be exchanged for the mortgage notes of the insurance company as contemplated by the contract of sale.

The complainant then sued and asked judgment for the amount of the note with interest and for the principal value of the mortgages, making a total amount of $293,329.51 plus interest and attorneys fees. It requests foreclosure of the pledge on the common stock of the corporation.

The defendant's original answer alleged a mutual rescission of the sale and note on or about October 26, 1967. It appears that on or about said date the officers of the insurance company, who had been elected by the defendant Nineteen Corporation, resigned. Guaranty Financial Corporation then nominated and elected new directors and officers of the insurance company and the mortgage notes which had been transferred from the insurance company to Guaranty Financial Corporation were retransferred by Guaranty Financial Corporation to the insurance company. Defendant Nineteen Corporation then filed its amended and substituted answer and counterclaim and in this answer made the admissions and denials above referred to. The defendant also pleaded that the note and mortgage described in paragraph 3 of the complaint were usurious and void and pled usury as a full and complete defense. Defendant prayed that the complaint be dismissed, that plaintiff be ordered to surrender to defendant the stock of the insurance company, that the collateral promissory note, pledge agreement and real estate mortgage be cancelled and annulled, and all other proper relief.

At the time of the trial only one witness testified for the plaintiff. This witness was Mr. McCarty, who was the president of Guaranty Financial Corporation. The original contract of sale was introduced. The testimony then was that there were various negotiations for the amendment of the contract whereby in lieu of the $141,000 cash payment the note, pledge agreement and real estate mortgage were executed.

In response to the question of usury, the plaintiff offered a balance sheet which reflected that the net

worth of the company on October 23, 1967, was $272,-392.64. The witness testified that the value of the charter was $22,000, or at least that was the value which the defendant agreed to pay. These 2 figures he testtified added together, less the amount of the mortgage notes on hand on October 23, 1967, were equal to the amount of the note which was executed by defendant, Nineteen Corporation. He further testified that between October 1 and October 23 three of the mortgages owned by the insurance company had been sold and there had been various payments on the mortgage indebtedness. Defendant objected to this testimony under the parol evidence rule and on the grounds further that it was at variance with the terms of the complaint. Plaintiff then rested.

The defendant offered only one witness, Joe B. Bernard. Mr. Bernard's testimony was to the effect that he lived at Amarillo, Texas, and he had executed a subordination agreement which subordinated the lien of his second mortgage on the lands lying in Oklahoma to a new mortgage which might be executed by Nineteen Corporation to the insurance company, Universal Insurance Company. Defendant offered no other testimony.

The complaint in the case was filed on December 20, 1967. The Chancellor issued his opinion on April 29, 1968. The Chancellor issued findings of fact in which he found that there was a new agreement, that instead of a cash payment as provided for in the written contract the defendant was to execute its promissory note to be secured by a collateral pledge of the Universal stock and a first mortgage lien upon certain real property in Oklahoma City, Oklahoma. The new agreement provided further that the defendant was to transfer to the plaintiff its own first real estate mortgage loan with a principal balance of $147,557.24. He further found that even though Mr. McCarty's testimony is not uncontradicted as a matter of law, nevertheless, no witness took the stand to contradict Mr. McCarty's testi-

mony and held against the defendant on its contention of usury. The Court held that the plaintiff is entitled to a judgment in the sum of $293,329.51 with interest plus a $10,000 attorney's fee and that the property should be offered for sale at a public sale to the highest bidder for cash. A decree was entered pursuant to this opinion and in due course this appeal ensued.

We hold that the findings of the Chancellor were not against the weight of the evidence on the question of usury. The defendant-appellant has not carried the burden of proving usury which is upon the party who asserts it. *Carter* v. *Zachary,* 243 Ark. 104, 418 S.W. 2d 787; *Wallace* v. *Hamilton,* 238 Ark. 406, 382 S.W. 2d 363. The complaint alleged that a new agreement was entered into. This was admitted in the answer. The Court found that a new agreement was entered into. Obviously the new agreement could be supported by a new consideration. We think that evidence was admissible to show that there had been a change in the assets of the company whose stock was being transferred. We further think that evidence is admissible to show the relationship between this new consideration and this change in assets. Certainly there is no contention that there was usury in the original agreement, that is, the written agreement, and we hold that usury in the new agreement was not established by defendant-appellant, who had the burden of proof. In reaching this conclusion we have taken due note of appellant's contention that the first sentence in paragraph 3 of the complaint, which is quoted above, establishes that the new agreement was usurious. We do not agree with this contention. However, if appellant's interpretation of the conclusion that should be reached with respect to this sentence is correct, then certainly the burden would be on the creditor to show that the contract was not usurious and oral testimony is admissible for this purpose. *Andrews* v. *Martin,* 245 Ark. 1010, 436 S.W. 2d 285; *Peoples Loan and Investment Co.* v. *Booth,* 245 Ark. 144, 431 S.W. 2d 472; *Universal C.I.T. Credit Cor-*

*poration* v. *Lackey,* 228 Ark. 101, 305 S.W. 2d 858.

Appellant also attacks the provisions of the decree as to the application of the proceeds. However, the pledge agreement authorized the application of the proceeds on any of the liabilities secured by the pledge agreement and the pledge agreement secures the original note and all other liabilities, direct or indirect, absolute or contingent, due or to become due to the appellee. We do not find the directions of the decree with reference to the application of the proceeds are inequitable, that is, that the proceeds of the aforesaid sale of the common stock shall be applied first against the portion of the judgment obtained by the plaintiff by virtue of defendant's failure to cause the plaintiff to receive real estate mortgage loans in the principal sum of $147,-557.24, together with the interest accruing thereon.

Appellant next states that the decree is in error for the reason that it ordered a sale of the property for cash contrary to *Ark. Stat. Ann.* 51-1109 which reads, "Sales of personal property made by order of the court shall be on a credit of three months; * * *"

We agree with appellee that this litigation involved a foreclosure of a pledge by court action and that pledges are governed by the Uniform Commercial Code. If the sale had not been made by order of the court the collateral might have been disposed of in any way that was commercially reasonable but, since the foreclosure was by judicial action, then the requirements of *Ark. Stat. Ann.* 51-1109 govern and by the direct terms of the statute, sales by order of the court must be on a credit of three months. *Turner* v. *Ironside,* 208 Ark. 17, 184 S.W. 2d 810; *De Yampert* v. *Manley,* 127 Ark. 153, 191 S.W. 905.

We also agree with the appellant that the decree is in error insofar as it attempts to fix a lien on lands lying in Oklahoma.

For the reasons stated the decree is reversed and remanded with instructions to enter a decree in accordance herewith.

FOGLEMAN, J., disqualified.