DANIEL L. TROXEL BY HIS FATHER AND NEXT FRIEND *v.*
BOB SULLIVAN CHEVROLET-CADILLAC CO.

5-5314                                   455 S. W. 2d 667

Opinion delivered June 22, 1970

*Lee Ward,* for appellant.

*Graham Partlow, Jr.,* for appellee.

J. FRED JONES, Justice. This is an appeal by Daniel
L. Troxel, a minor, by his father and next friend, from
a decree of the Mississippi County Chancery Court,
Chickasawba District, wherein the chancellor entered a
decree in favor of Troxel against Bob Sullivan Chevro-
let-Cadillac Co. for $1,500, and for Bob Sullivan Chev-
rolet-Cadillac Co. on its counterclaim against Troxel
for $511.69.

The facts are briefly these: On January 16, 1969,
Daniel L. Troxel, who was then 18 years of age, pur-
chased a new automobile from the appellee Sullivan
Co. for the agreed purchase price of $3,631.69. He paid
the sum of $1,500 cash on the purchase price and agreed
in writing to continue monthly payments in the amount
of $72.22 each month for a period of 36 months. Danny
Troxel took the automobile home and the following
Monday morning on January 20, while he was driving

the new automobile, the universal joint fell out of it. He returned the automobile to the appellee who repaired it and Danny paid the sum of $17.88 over and above the amount of warranty. Danny was also charged $107.62 for credit life insurance. He denied that he ever received a policy but the evidence is clear that Educators and Professional Life Insurance Company policy No. 440189 in the amount of $2,599 was issued to Danny L. Troxel with the appellee shown as beneficiary.

Troxel filed suit on March 13, 1969, alleging usury in the sale of the automobile and also alleging his election to rescind the contract because of minority under the provisions of Ark. Stat. Ann. § 68-1601 (Repl. 1957) which is as follows:

"In the case of a sale, contract to sell, conditional sale contract, or other contract to which an infant 18 years of age or older is a party, such sale, contract to sell, conditional sale contract or other contract cannot be rescinded by the infant unless and until such infant makes full restitution to the other party or parties to the sale, contract to sell, conditional sale contract or other contract of the property and/or money received by the infant from such other party or parties. Full restitution of property means that the property must be returned in substantially the same condition as received; or if this cannot be done, there must be returned the property plus a sum of money which equals the difference between the fair market value of the property at this [the] time the sale, contract to sell, conditional sale contract, or other contract was made and its fair market value at the time of the rescission; or if the property is no longer in the possession of the infant, there must be returned a sum of money equal to its fair market value at time the sale, contract to sell, conditional sale contract or other contract was made."

Troxel prayed for recovery of the automobile free

and clear of any encumbrance as a penalty for usury. In the alternative, he prayed judgment for $1,500 together with his cost. The appellee filed answer and counterclaim in which it alleged that young Troxel represented to the appellee that he was born on August 4, 1947, and that such falsehood induced the appellee to sell the automobile to him. The appellee denied that Troxel has made full restitution as required by § 68-1601, supra, and the appellee prayed foreclosure of its lien under the Uniform Commercial Code and for judgment against Troxel for any unrecovered balance of the debt.

The chancellor found that after the purchase of the automobile and its return to the appellee for repairs, Troxel defaulted on his contract of purchase and the automobile was properly retained by the appellee under the provisions of the Uniform Commercial Code; that after due advertisement the automobile was sold and the proceeds applied on the balance of the purchase price of the automobile. The chancellor also found, however, that Troxel was in fact under the age of 21 years when he purchased the automobile, and that Troxel had a right to rescind the contract because of minority. The chancellor further found that young Troxel did not return the automobile to the appellee in substantially the same condition as he received it, as required under the provisions of § 68-1601, supra; and that the value of the automobile had decreased in the amount of $511.69 from the time of its purchase by Troxel until the time it was repossessed by appellee. The chancellor decreed judgment in favor of Troxel for $1,500 with set off in favor of the appellee Sullivan Co. for $511.69 on its counterclaim, leaving a net balance of $988.31 for which a decree was entered in favor of Troxel.

On appeal to this court Troxel relies on the following points for reversal:

"The trial court erred in holding that the appellee

did not practice usury upon the appellant in the transaction involved here.

The trial court erred in setting off against $1,500.00 owed to appellant by the appellee damages in the amount of $511.69 or in any other sum.

The trial court erred in refusing to assess the costs of this proceeding against the appellee."

In discussing appellant's points in the order presented, we find no merit in appellant's contention under its first point. The usury allegation is based upon the additional charge of $107.62 for credit life insurance and the record falls short of proof that this charge was a subterfuge for additional interest. The record is clear that Troxel requested, or at least authorized, the appellee to purchase the insurance, and that the insurance was actually purchased by the appellee and the policy issued by the insurance company. Troxel received full value for the amount he was charged for insurance, and when the insurance was canceled, the unearned premium was refunded by the insurance company and credited to Troxel's account. We have held that a collateral agreement of this nature, when made in good faith and carried out, does not constitute usury. *Universal C. I. T. Credit Corp.* v. *Lackey,* 228 Ark. 101, 305 S. W. 2d 858.

As to appellant's second point, we are of the opinion that the chancellor did not err in setting off against the $1,500 owed to appellant by the appellee, damages in the amount of $511.69. There is no question that the automobile had been driven 266 miles while it was in the possession of the appellant. The evidence is undisputed that the automobile could not be resold as a new automobile, but that it would be necessary to resell it as a used automobile and at a reduction from the new market price.

Young Troxel did not testify when the case was tried, but his father, J. H. Troxel, testified that Danny

was 18 years of age at the time he purchased the automobile; that he rode in the automobile with Danny on the evening he purchased it, and that from his experience in having owned at least 12 different automobiles, he knew there was something wrong with the rear end of the automobile and so advised Danny. Despite this advice from Mr. Troxel, Danny kept the automobile for three additional days and drove it a distance of 266 miles. The automobile was a high powered sports model and even though the manufacturer honored its warranty in repairing the automobile, there was considerable inference that could be drawn from the evidence that Danny's own abuse and mistreatment of the automobile may have contributed to the necessity for the repairs. Mr. Troxel testified that in his opinion, if the automobile was properly repaired, it was in better shape after the repairs than it was when Danny purchased it. If Mr. Troxel was correct in this regard, then any deterioration in market value would be solely due to the use of the automobile in driving it 266 miles.

Mr. J. D. Widner, general manager of the appellee Bob Sullivan Co., testified that he approves all credit sales and is familiar with the sale to Troxel. Mr. Widner testified that the appellee purchased the automobile for $3,331.69. He testified that the company considers the cost of servicing a new automobile to be $60, and that in the purchase of a new automobile a commission in the amount of $70 is paid, making a total of $3,461.69 the appellee company actually had invested in the automobile when it was sold to Troxel for the sale price of $3,631.69. He testified that the company received a rebate from the life insurance company in the amount of $95.78 for the unearned premium on the credit life insurance purchased by Troxel, making the company's total "pay-off" in the amount of $2,189.78. He says that the automobile was sold to an individual on June 23, 1969, for the net amount of $3,081.46. This witness also testified that the $17.88 Troxel paid over and above the warranty on the repair to the automobile, was for a clutch disk which was so sensitive to misuse it was not subject to warranty.

Mr. Widner testified that after the automobile was repaired following the four days and 266 miles Troxel had used it, the automobile was in as good shape mechanically as a new automobile, and that the only thing that had reduced it in value was the fact that it would have to be sold as a used car.

The chancellor does not set out how he arrived at the exact figure of $511.69 as the loss in value on the automobile and which he allowed as a set off against the $1,500 down payment he ordered returned to the appellant. There is considerable testimony pertaining to the various values of the automobile, both wholesale and retail. Mr. Widner testified that the market value of the automobile, in its repaired condition, was practically the same as before except for the fact that after it was returned by the appellant with 266 miles showing on the speedometer, it became a used automobile on the market. Neither Mr. Widner nor any other witness, testified what the market value would be for a used automobile of the make and model and with the speedometer reading as the automobile involved in this case. Mr. Widner does state that the automobile was worth what it was sold for and there is no question that it was sold to Troxel for $3,631.69, and that it was sold the second time, after repair, for $3,081.46. Consequently, the appellee finally sold the automobile for $550.23 less than the original sale price to Troxel.

Thus, it appears that the only difference in the market value of the automobile after it was purchased and used by Troxel from January 16 to January 20 was due to the fact that the automobile had been driven 266 miles and it would be necessary to sell it as a used automobile. According to Mr. Widner's testimony, the principal item accounting for a difference in value would be the loss of six months of the first years' warranty, but no monetary value is placed on that. Mr. Troxel testified that the automobile was in better shape after the repairs than it was before, and Mr. Widner says that it was in as good shape mechanically as a new automobile, consequently, the chancellor was justified

in accepting the difference in the retail price for which the automobile sold as the difference in the market value of the automobile because of its use by the appellant. This difference amounted to $550.23, so we conclude that the court did not err in awarding a set off in the amount of $511.69.

It must be remembered that this is not -a case of rescission for breach of express or implied warranties, or because of fraudulent misrepresentations. This is a rescission because the purchaser was under 21 years of age and the appellant's right to rescind is not questioned. The appellant was married and falsely represented himself to be 21 years of age when he purchased the automobile. Other evidence in the record before us does not recommend the appellant for special consideration under the axioms of equity. We conclude, therefore, that the chancellor's decree is not against the preponderance of the evidence and should be affirmed.

We hold that the chancellor did not abuse his discretion, under the facts of this case, in requiring that each party pay his own cost.

The decree is affirmed.