## NINETEEN CORPORATION *v.* GUARANTY FINANCIAL CORP.

5-5577                                    467 S. W. 2d 728

Opinion delivered May 31, 1971
[Rehearing denied June 28, 1971.]

*John Harris Jones,* for appellant.

*Coleman, Gantt, Ramsay & Cox,* for appellee.

FRANK HOLT, Justice. This is the second appeal in this action. The first appeal resulted from a breach of

contract action brought by appellee, Guaranty Financial Corporation, against appellant, Nineteen Corporation. *Nineteen Corporation* v. *Guaranty Financial Corp.*, (Ark. Mar. 17, 1969) 438 S. W. 2d 685. There we affirmed the chancellor's findings that appellant had mortgaged to appellee 150,000 shares of Universal Insurance stock and certain real property located in Oklahoma as security for the purchase price of the 150,000 shares purchased from appellee; that appellant had defaulted on the sales contract; that it was not a usurious transaction; and that appellee was entitled to a judgment of $293,329.51. We reversed and remanded, however, because the chancellor's decree ordered a judicial sale for cash of the 150,000 shares of stock contrary to Ark. Stat. Ann. § 51-1109 (1947). This statute requires a judicial sale to be on a three months' credit basis. The decree also erroneously attempted to fix a lien on the Oklahoma lands, the additional collateral.

Upon remand, appellee was ordered to tender back to the commissioner the 150,000 shares of Universal Insurance Company stock which it, as the secured party, had purchased at the void cash sale in order that a sale on a three months' credit basis could be properly effected. Appellee, however, was unable to deliver the shares of stock to the commissioner. During the pendency of the first appeal, it had purchased the stock at the void judicial sale for $230,000 cash and a month later sold the stock to a third party, Arkansas Best, for $251,574.07. Also, during the first appeal, appellee had obtained a foreclosure against the Oklahoma lands and had purchased these lands at a judicial sale.

In the present proceeding the chancellor found a $41,755.44 deficiency judgment (after applying the $251,-574.07 to the original $293,329.51 judgment) plus the interest and attorney's fees. However, the chancellor ordered appellee to reconvey the Oklahoma property to appellant upon payment by appellant of this deficiency judgment plus the interest and attorney's fees, all of which totaled $65,546.79. Appellant brings this second appeal asserting that the chancellor erred by refusing to apply the presumption that the stock sold at the void

sale was worth at least the amount of the debt and erred further in accepting the testimony of Guaranty's president as to the price received upon the resale of the stock as being the amount that should reasonably have been obtained through a sale conducted according to law.

In support of its contention, appellant relies upon *Norton* v. *National Bank of Commerce,* 240 Ark. 143, 398 S. W. 2d 538 (1966); *Barker* v. *Horn,* 245 Ark. 315, 432 S. W. 2d 21 (1968), and related cases. In *Norton* we said: "We think the just solution is to indulge the presumption in the first instance that the collateral was worth at least the amount of the debt, thereby shifting to the creditor the burden of proving the amount that should reasonably have been obtained through a sale conducted according to law." In *Barker* the only evidence adduced to show the value of the collateral was the selling price and this court refused to accept that evidence as being sufficient to support a judgment in favor of the secured party. In both *Norton* and *Barker,* and related cases, the secured party brought an action for a deficiency judgment after the collateral had been sold at a private sale without any notice to the defaulting debtor.

In the case at bar there is no question of notice. The appellant was given notice and, in fact, made objections to the sale. Appellant merely relies upon the presumption established in *Norton* to prevent a deficiency judgment being rendered against him. Even if we agree with appellant's contention that *Norton* is applicable, which we do not decide, we think appellee has sufficiently met the presumption.

We hold that Guaranty's president was a competent witness to rebut the *Norton* presumption. He was president of the corporate organization during the entire litigation and testified that he had ten years' experience in such business affairs and in acquiring and selling mortgages; and that he had placed ten million dollars in mortgage loans. He said that the partial liquidation of Universal plus the sale price of certain assets to Arkansas

Best totaled $251,574.07. He testified as to the value of Universal's assets as of the date of the sale transaction. He stated that the mortgages were valued at $139,841.65; that the total cash owned by the company was $45,732.42; that the company had $50,000 in certificates of deposit and the value of the company's charter was $16,000. We think that his testimony about the resale to Arkansas Best shows that it was conducted similarly to the original sale nine months earlier to appellant and, therefore, establishes that the resale was a negotiated and an arms-length transaction. In our view this evidence, which is unrebutted, is sufficient to establish the reasonable value of the assets which "would have been obtained through a sale conducted according to law" as required by *Norton*.

Appellant further contends that the testimony of Guaranty's president as to the price received upon resale of the stock was refuted by his earlier testimony. At the first trial the president testified as to the value of Universal's assets in October 1967, the date of the sale to appellant who defaulted. He testified that as of this sale date appellee owned mortgages valued at $148,620.37; $72,663 in cash, $50,000 in saving's accounts, and the charter was valued at $22,000. At the second trial, the same witness testified that in July 1968, the date of the resale, the mortgages were valued at $139,841.65; the company had $45,732 in cash, $50,000 in saving's accounts, and its charter was valued at $16,000.

Appellant asserts that it only had control of Universal for four days during the nine-month period between the sale by appellee to appellant and the resale by appellee, after appellant's default, to Arkansas Best, during which interim Universal's assets diminished at least $41,000. Even though such a variance existed, the president of appellee testified without contradiction that no expenditures were paid from Universal to appellee or any of its management during this nine months or until the resale occurred. He also testified that withdrawals from Universal were used to pay obligations which appellant's management had incurred during the time it

had control of Universal. Other expenditures were for reinsurance and other normal expenses. From a review of his testimony and the entire record, we cannot say that the asserted discrepancies were not sufficiently explained.

Affirmed.

FOGLEMAN, J., not participating.