CENTRAL FLYING SERVICE, INC.
*v.* Larry CAIN

84-275                                                           686 S.W.2d 432

Supreme Court of Arkansas
Opinion delivered March 25, 1985
[Rehearing denied April 29, 1985.]

*Wright, Lindsey & Jennings,* for appellant.

*Wright & Chaney, P.A.,* by: *Travis R. Berry,* for appellee.

STEELE HAYS, Justice. This case comes to us on appeal on the issue of whether the interest charged on a matured debt was usurious.

In July, 1981, Larry Cain, appellee, established an open account with Central Flying Service, Inc., appellant, and began receiving flight training. All services had been performed by the end of October, 1981 and the balance on the account as $4,771.11. Nothing was paid on the account and after several months Central began charging interest on the amount due at a rate of 10% per annum[1]. In December, 1982, when Amendment 60 of the Arkansas Constitution became effective, Central began charging interest at the rate of 17% per annum. Cain refused to pay the account and Central filed suit. The case was submitted on the merits to the Circuit Court of Clark County, Arkansas, on a joint stipulation of fact and the pleadings.

Both parties agreed that the law at the time of the making of the contract determines whether a contract is usurious. *General Contract Corporation* v. *Duke,* 223 Ark. 938, 270 S.W.2d 918 (1954); *Sloan* v. *Sears Roebuck & Co.,* 228 Ark. 464, 308 S.W.2d 802 (1958), but disagreed as to when the contract was made. Appellee argued below that the contract was formed in July, 1981, and was controlled by

---

[1]The amounts of interest allowable under Amendment 60 are not argued.

Article 19, Section 13 of the Constitution, providing for maximum interest rate of 10%. Appellant, citing *Bank of Evening Shade* v. *Lindsey*, 278 Ark. 132, 644 S.W.2d 920 (1983) argued that because it was not obligated to renew the debt, any renewal or extension was in essence a new contract. The statement sent for the month of December, 1982, was a new contract and therefore Amendment 60, allowing a higher interest rate, would control. The trial court rejected appellant's argument and found the contract was controlled by the 10% interest rate of Article 19, Section 13.

On appeal appellant renews the argument made below and we find the argument persuasive.

It is a general rule of contracts that payment is due within a reasonable time upon completion of the services contracted for, and there is no objection raised by appellee that the account was not so due. Once a debt has matured and become due, the creditor may begin to charge interest, even if no interest has before been charged or agreed to. *State of Tennessee* v. *Barton*, 210 Ark. 816, 198 S.W.2d 512 (1947); *Temple* v. *Hamilton*, 178 Ark. 355, 11 S.W. 465 (1928). Under the circumstances of this case then, the appellant was justified in charging the appellee interest on the debt owing. The only question that remains is whether appellant was justified in charging the higher rate allowed by Amendment 60 when it sent out its charges to appellee in the December, 1982 statement. In *Bank of Evening Shade, supra*, the bank renewed a loan and charged a rate of interest allowable by law at the date of the renewal but which was higher than that allowed when the contract had originally been entered into. We found inasmuch as there was no obligation or commitment to renew the loan, a new contract could be made and the existing interest rate was applicable. While that decision was made within the context of the Monetary Control Act and federal regulatory guidelines issued pursuant to the Act, the underlying rationale applies with equal force to this situation which presents essentially the same considerations.

Here, the appellee's debt was due and the appellant was under no obligation or commitment to renew the loan or

extend time for payment. Appellant was free to file suit to recover its debt, or defer that action in the hope that payment would occur. At the end of each monthly billing period a new loan or agreement was implied, extending the appellee's indebtedness for an additional month. In the month of December another contract was formed, this time however, the appellant had available to it, the higher rate of interest allowed by Amendment 60. Based on our decision in *Bank of Evening Shade,* we find that under such a contractual arrangement the appellant was justified in charging the higher interest rate. See also, Barrier, Usury in Arkansas: The 17% Solution, 37 Ark. L. Rev. 572 at 578-82.

Appellee points out that Amendment 60 did not become effective until December 3, 1982, whereas the stipulation between the parties recites that interest at the rate of 17% began on December 1, 1982. Thus, appellee contends the charge of 17% would be usurious even if Amendment 60 were found to be applicable to this indebtedness.

But it is clear from the arguments made both here and below that the intent of the stipulation was to simplify the factual basis by which the real issue was presented, that is, whether an indebtedness which originated prior to the effective date of Amendment 60 was subject to the higher interest allowed by the amendment. Whether Amendment 60 took effect on December 1 or December 3, is irrelevant in the context of this case and we note the trial court did not rely on that fine distinction.

Even if the stipulation is taken literally, as appellee urges, it also recites that an itemized statement of account attached to the complaint is an *accurate* recapitulation of the account. That account shows the interest charge for December, 1982, to have been $60.51, whereas 17% would have been $65.76. That leaves a difference of $5.25, and thus the appellant could not have calculated interest on December 1 at 17%.

The order is reversed and remanded to the trial court for the entry of a judgment consistent with this opinion.