Mr. Robert M. Eubanks III Insurance Commissioner Arkansas Insurance Department 400 University Tower Building Little Rock, AR 72204
Re: Request for an Attorney General's Opinion on Amendment 60 to the Arkansas Constitution and Ark. Stat. Ann. 66-3308 (Supp. 1983)
Dear Mr. Eubanks:
Your request for an Official Attorney General's Opinion concerning the above captioned matter presents the following specific questions:
1. What is the effect of Amendment 60 on Ark. Stat. Ann. 66-3308?
 2. Is it permissible to allow the parties to the insurance contract to agree that the applicable constitutional usury limit is to be determined as of the date the insurance policy is issued, rather than at the later date when the policy loan application is made, which would result in the establishment of a separate maximum rate for each loan that is made under the policy? In addition, would it be permissible to determine at the time of policy issuance the maximum rate for each classification of Amendment 60, i.e., general loans or consumer loans or credit sales?
 3. To be consistent with Bishop v. Linkway, 280 Ark. 106 (1983), we would assume that the variable loan rate provisions of Ark. Stat. Ann. 66-3308 would be fully operative subject only to the maximum interest rate limitations of Amendment 60. Consequently, if the variable loan interest rate law dictated a lower maximum rate, then it would apply. However, if that index were to permit a higher rate, the Constitutional limit would place a ceiling on the operation of that provision. Is this an acceptable interpretation?
For convenience and clarity, your questions will be answered in the order presented.
 I.
EFFECT OF AMENDMENT 60 ON ARK. STAT. ANN. 60-3308: Section 3308 requires policies to provide for policy loan interest rates either at a specified rate of not more than 8% per annum or through use of an adjustable maximum interest rate established pursuant to further provisions of the statute as permitted by law and subject to any applicable usury limitation.
Amendment 60 to the Arkansas Constitution states:
Section 1. Maximum lawful rates of interest.
(a) General Loans:
 (i) The maximum lawful rate of interest on any contract entered into after the effective date hereof shall not exceed 5% (five percent) per annum above the federal reserve discount rate AT THE TIME OF THE CONTRACT.
 (ii) All such contracts having a rate of interest in excess of the maximum lawful rate shall be void as to the unpaid interest. . . . It is unlawful for any person to knowingly charge a rate of interest in excess of the maximum lawful rate in effect AT THE TIME OF THE CONTRACT,. . . ." (emphasis supplied.)
Amendment 670 being a Constitutional provision clearly controls Ark. Stat. Ann. 66-3308 as a matter of law.
 II.
CONTRACT PROVISIONS: The question then becomes that of whether or not an insurer utilizing the adjustable maximum interest rate option afforded by Subsection (3)(a)(ii) can contractually agree with the insured that the applicable constitutional usury limit for purposes of the adjustable rate may be determined as of the date the policy is issued even though no loan is made at that time.
Since the insurer is obligated to include a policy loan provision under Ark. Stat. Ann. 66-3302 the loan to the insured must be made upon the accrual of loan value at the election of the policyholder. Consequently, the insurer is legally obligated to make the loan as of the inception date of the policy. Therefore, as all contractual provisions necessary to advance funds pursuant to the policy loan provisions are in place at the time of inception of the policy, all elements of the complete contract exist at that time and the applicable usury limitation must be deemed to be that existing as of the date of the contract.
This conclusion is consistent with the holdings of the Arkansas Supreme Court in Bank of Evening Shade v. Lindsey, 278 Ark. 132,684 S.W.2d 920 (1983) and Central Flying Service v. Cain, 285 Ark. 310,686 S.W.2d 432 (1985). In those cases, the Court found that the lack of a preexisting obligation to extend credit fixed the time of a contract at the time of an extension of credit. The second case refers to the first case and also to Usury in Arkansas: The 17% Solution, 37 Ark. Law Rev. 572 (1983), which sets out the necessary corollary to this rule at page 579: "If there is a commitment or obligation implicit in the original transaction to extend (credit) on largely preagreed terms, an extension (of credit) does not result in a `new' contract. Rather, the underlying obligation is that represented by the original (contract). . . ."
As to differentiation between general loans or consumer loans as classified by Amendment 60, it necessarily follows that the maximum rate for both would be determined as of the policy issue date even though the classification of the loan cannot be made until the funds are actually advanced.
Policies issued under the Pre-1981 version of 66-308 (Act 148 of 1959) would continue to be governed by the terms of such policies (policy loans at stated rate not to exceed 8% — increased from 6% by Act 279 of 1977). Policies issued AFTER the effective date of the current version of 66-3308, but BEFORE the effective date of Amendment 60 are subject to a 10% limit in the event a floating rate is specified.
Caution must be given, however, to the possibility of the establishment of subsequent "contract dates" having the effect of invoking a new controlling maximum usury rate. Such events would include, but not be necessarily limited to, mutual modification of the contract for adequate consideration increase and/or decrease of policy limits, and exercise of options afforded by the policy terms.
 III.
BISHOP v. LINKWAY: The interpretation proposed by your request letter is correct due to the constitutional status of Amendment 60 having the range within which establishing a "ceiling" limiting the effect of the statutory provisions afforded by 66-3308 may operate.
This formal opinion has been prepared for the use and benefit of the Arkansas Insurance Commission. It is for advisory purposes only and is intended for the use of our client. Any third parties contemplating reliance upon any conclusions stated herein are cautioned that more conservative courses of action may exist and are encouraged to seek the advice and counsel of an attorney directly responsible for, and fully familiar with, the particular facts and circumstances leading to interest in the conclusions set forth herein.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Dan Kennett.